UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| GREGORY JOHN VICTOR, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 1:14-CV-273-JD-SLJ |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Gregory John Victor ("Victor") applied for Disability Insurance Benefits in 2011. The application was denied initially and upon reconsideration. Victor then filed a complaint in this Court, seeking review of the final decision of the Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. On May 29, 2015, Victor filed his brief in support of his request to reverse the decision of the Commissioner, [DE 19], to which the Commissioner responded on September 4, 2015. [DE 25]. On September 17, 2015, Victor filed his reply. [DE 26]. The matter is now ripe for ruling, and jurisdiction is established pursuant to 42 U.S.C. § 405(g). For the following reasons the Court REMANDS this matter to the Commissioner for further proceedings.

### I.     FACTUAL BACKGROUND

Victor filed his application for benefits in 2011, alleging an onset date of May 14, 2009, for limitations caused by physical and mental impairments. Victor's application was denied initially on December 8, 2011, and upon reconsideration on February 6, 2012. A hearing with Administrative Law Judge John Giannikas ("ALJ") was held on February 27, 2013, at which

1

Victor was represented by counsel. At the hearing the ALJ heard testimony from Durado Brooks, M.D., an impartial medical expert, and Stephen Davis, an impartial vocational expert ("VE").

In the written opinion that followed, the ALJ determined Victor last met the insured status requirements of the Social Security Act on September 30, 2010. Victor had not engaged in substantial gainful activity during the period from the alleged onset date through his date last insured. Furthermore, the ALJ determined Victor suffered a severe impairment in the form of degenerative disc disease, but dismissed any anxiety related disorders as non-severe and unsupported by the record. The ALJ then opined that Victor's degenerative disc disease, while severe, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 ("Listings"). Ultimately the ALJ found Victor had the residual functional capacity ("RFC")[1] to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ found Victor could lift/carry and push/pull up to 10 pounds frequently and 20 pounds occasionally, sit for a total of about six hours in an eight hour workday, and stand/walk for a total of about four hours in an eight hour workday. However, the ALJ noted Victor required the ability to shift between sitting and standing positions every 20 minutes in the workday. In addition to the above limitations the ALJ determined Victor could never climb ladders, ropes, scaffolds, or balance. However, Victor could occasionally climb ramps and stairs, stop, kneel, crouch, and crawl. Victor could bend over to 20 degrees forward flexion less than occasionally, and had to avoid concentrated exposure to hazards, unprotected heights, and moving machinery.

After determining Victor's RFC, the ALJ opined Victor was unable to perform any past relevant work consistent with 20 C.F.R. § 404.1565, but had acquired work skills from his

---

[1] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

previous position as a manager. The ALJ then presented hypothetical questions to the VE that were more restrictive than the RFC determined by the ALJ.[2] The ALJ concluded Victor's RFC allowed him to work jobs that existed in significant numbers in the national economy as an assistant buyer, stock order clerk, and material clerk. As a result, the ALJ ruled that Victor was not disabled. The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## II. STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

---

[2] The ALJ asked the VE about positions limiting Victor to a stand/walk position for a total of two hours in an eight hour workday. The RFC determined by the ALJ, however, allowed up to four hours of a stand/walk position in an eight hour workday. The VE gave testimony about jobs Victor could perform with a two hour stand/walk restriction. The ALJ reasoned sufficient jobs existed because if Victor could stand/walk for four hours in an eight hour workday, Victor could reasonably be expected to perform work that required only two hours of a stand/walk position.

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection, and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Rather, an ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id*. Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III.   ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). In the alternative, if a Listing is not met or equaled in between steps three and four, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Broadly grouped, Victor challenges the ALJ's decision for three reasons. First, the ALJ did not properly apply the treating source rule to Dr. Dasari. Second, the ALJ improperly weighed the opinions of Dr. Nallari, Dr. Books, Dr. Kucharzyk, and Dr. Tyndall. Third, the ALJ's RFC determination was not supported by substantial evidence in the record.

A. **Treating Source Rule**

Victor argues the ALJ committed reversible error by failing to adequately discuss or assign the proper weight to Dr. Dasari's opinion. [De 19 p. 10-13]. This Court agrees.

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings. The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be

"lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6) including: 1) the "length of the treatment relationship and the frequency of examination;" 2) the "[n]ature and extent of the treatment relationship;" 3) "[s]upportability;" 4) consistency "with the record as a whole;" and 5) whether the treating physician was a specialist in the relevant area.

1. *Dr. Dasari's Testimony*

Social Security Disability cases often have numerous doctors involved in the care and review of a claimant's claim for disability. This case is no exception. By this Court's account there were at least nine different physicians involved in this case. With numerous doctors making a variety of findings it is necessary to be specific. Why the ALJ did not refer to a single doctor in his opinion by name, then, is puzzling to this Court. Left to its own interpretation, this Court reads the opinion to be void of the necessary discussion of Dr. Dasari's opinion consistent with 20 C.F.R. § 404.1527(c)(2).

Dr. Dasari was Victor's treating physician beginning in February 2010. Victor was initially referred to Dr. Dasari by Dr. Chang for pain management and care related to the degenerative disc disease. (R. 319-321). Dr. Dasari continued to see and treat Victor through April 2012. (R. 401-402). A significant portion of the record is comprised of Dr. Dasari's findings and treatment plans. Beginning in March 2010, Dr. Dasari initially noted Victor had received some relief from a previous epidural steroid injection and suggested Victor try another

7

epidural injection. (R. 322-323). An epidural injection was administered that day. (R. 411-412). When the pain returned later in March of 2010, Dr. Dasari noted Victor was experiencing "fairly significant back pain," and while conservative treatments had been previously employed, the treatment "really ha[d] not helped [Victor]." (R. 320). Accordingly, Dr. Dasari performed a provocative lumbar discography on March 29, 2010. (R. 324-326). The discography revealed a large annular tear at the L4-L5 level and pain at the L5-S1 level at a high pressure. (*Id.*) When the pain persisted, Dr. Dasari suggested a diagnostic medial branch block be performed. (R. 327-328). Dr. Dasari performed the procedure in April of 2010. (R. 405-410). Then, when the pain returned Dr. Dasari recommended radiofrequency neurotomy. (R. 331-332). Victor underwent the radiofrequency neurotomy in June 2010, which provided significant relief from pain for an extended period of time. (R. 333-334). By June of 2011, however, Victor's back pain had returned. (R. 338-339). Dr. Dasari then performed additional medial branch block procedures in July and August of 2011. (R. 340-342, 343-345).

In spite of this extensive medical history the ALJ summarily and namelessly disposes of Dr. Dasari's treatments in the following four sentences:[3]

> "The [c]laimant underwent a discography in March 2010 that showed some inconsistent findings. More specifically, an annular tear was identified at the L4-L5 level that was positive for pain, but not the claimant's concordant pain. At the L5-S1 level, the claimant had concordant pain at very high pressures so the doctor performing the discography could not conclusively identify the symptomatic discs. Further, the pain identified was only mild to moderate." (R. 23-24).

The Commissioner argues the ALJ did not commit error in failing to consider Dr. Dasari's findings because there were no findings to weigh, and Dr. Dasari never offered a medical opinion as to Victor's functional abilities. [De 25 p. 2]. This Court disagrees.

---

[3] Because the ALJ did not refer to any doctors by name this Court believes all references to Victor's "orthopedic doctor" to be Dr. Chang.

Dr. Dasari provided numerous findings in this case. At each of the thirteen appointments Dr. Dasari listed his findings resulting from the physical examination of Victor. These findings included where Victor felt pain, the degree to which Victor could bend forward and backward, and deep tendon reflexes – in part Victor's functional abilities. (R. 317-318, 319-321, 322-323, 327-328, 329-330, 331-332, 333-334, 335-337, 338-339, 346-347, 348-349, 350-351, 401-402). Dr. Dasari also found "a large annular tear to the left at L4-5" and "low grade axial back pain reproduced at very high pressure" in the L5-S1 region. (R. 328). These are findings[4] and signs[5] within the meaning of 20 C.F.R. § 404.1528, which the ALJ had a duty to consider in rendering his decision. It appears the ALJ ignored these findings.[6]

Dr. Dasari also offered opinions about Victor's treatment. Medical opinions are not confined to formal RFC determinations. "Medical opinions are statements from physicians…that reflect judgments about the nature and severity of your impairments including your symptoms, diagnosis and prognosis, what you can still do despite impairments, and your physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Dasari provided medical opinions in this case. Specifically, he opined in February 2010, "[Victor] has fairly significant back pain. [Victor] states he is unable to do any activity because of the persistent nature of the pain. He has tried conservative care with medications and Physical Therapy which really has not helped him." (R. 320). This opinion is particularly significant since the ALJ places great reliance on the continuation of "conservative treatment" as evidence of the severity of Victor's condition. Yet, when looking at Dr. Dasari's opinion, this Court questions whether the ALJ's reliance on

---

[4] "Laboratory findings are anatomical, physiological or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c).
[5] "Signs are anatomical, physiological, or psychological abnormalities which can be observed apart from your statements (symptoms)." 20 C.F.R. § 404.1528(b).
[6] The ALJ did mention the discography results in his opinion, however, he only provided the interpretation of the results from Victor's "orthopedic doctor," presumably Dr. Chang.

9

conservative treatment was misplaced. To simply say there were no opinions provided by Victor's treating physician is wrong. To the extent that Dr. Dasari's findings and opinions support a conclusion of disability, this Court cannot say. It is the job of the ALJ, not this Court, to weigh the evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, where the ALJ fails to offer "good reasons" for discounting a treating physician's opinion, remand is necessary. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

In reviewing the ALJ's opinion, it would appear the reason the ALJ did not discuss Dr. Dasari was because the ALJ did not consider Dr. Dasari a treating physician. A treating physician is one who regularly provides care to a patient. *Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). Dr. Dasari was a constant figurehead in Victor's care. The record reflects thirteen separate appointments spanning February 2010 to April 2012. Dr. Dasari seems to be the driving force behind Victor's treatment, recommending the epidural injections, (R. 322-323), the provocative lumbar discography, (R. 324-326), the diagnostic medial branch blocks, (R. 327-328), and the radiofrequency neurotomy. (R. 331-332). What is more, Dr. Dasari is the doctor who actually performed all the above procedures. Yet, the ALJ only provides any assessment and assigns any weight to Dr. Chang's opinion. While it is true Dr. Dasari continued to update Dr. Chang with Victor's progress and plans for treatment, this single fact does not disqualify Dr. Dasari as a treating physician. Dr. Dasari is a treating physician, and as such his opinion and findings should have been considered by the ALJ consistent with 20 C.F.R. § 404.1527(c)(2).

Even if the Court somehow found the ALJ was justified in implicitly declining to give any weight to Dr. Dasari's opinion, the ALJ would still have been required to articulate his reasons for doing so. Once the ALJ articulates reasons for rejecting the treating physician's opinion, the ALJ must still determine what weight the physician's opinion is due under the

applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). *See* 20 C.F.R. § 404.1527(d)(2). Even if not controlling, "treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 404.1527 and § 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2P. There existed ample evidence of the length of the treatment relationship, nature and extent of the treatment relationship, supportability, consistency, and specialization of Dr. Dasari consistent with 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6). The ALJ has provided no reason to give essentially zero weight to Dr. Dasari's opinion. Therefore remand is required for the ALJ to consider Dr. Dasari's opinion anew.

**B. Other Issues to be Considered on Remand**

Having concluded that remand is necessary to rectify problems in the ALJ's analysis of Dr. Dasari's opinion, the Court cannot address several of Victor's further arguments, namely that the ALJ improperly weighed the opinions of Dr. Chang,[7] Dr. Tyndall, Dr. Kucharzyk,[8] and Dr. Brooks. Dr. Dasari's opinion, as Victor's treating physician, will almost certainly impact the analysis given to the above doctors. Any review by this Court, without the ALJ's new analysis of Dr. Dasari, would require conjecture. Accordingly, this Court declines to do so at this time. However, for the sake of completeness, and to help ensure that the Commissioner's decision on remand is free from unnecessary errors, the Court notes that the following issues should also be addressed on remand.

---

[7] Victor attempts to introduce an "amended treatment note" by Dr. Chang. [DE 19 p. 5]. This Court has found remand necessary to address Dr. Dasari's opinion. On remand the ALJ may decide to what extent Dr. Chang's amended treatment note should be considered.

[8] Dr. Tyndall and Dr. Kucharzyk were discussed as a single doctor by the ALJ. (R. 23-24). Victor argues the two opinions conflict with one another. [DE 19 p. 15-16]. The ALJ gave great weight to the opinion of the "workers' compensation doctor." (R. 24). On remand the ALJ should make clear which opinion and doctor the ALJ is giving weight to.

11

1. *Dr. Nallari's opinion*

The ALJ determined at step two Victor's anxiety related disorder was a non-severe impairment under 20 C.F.R. § 404.1520(c). (R. 20). The ALJ also gave "very little weight" to Dr. Nallari's opinion that Victor's psychological impairments were the result of his back injuries from 2009. The ALJ based this conclusion on the fact that: 1) Dr. Nallari never reported any limitations due to the mental impairments; 2) Victor's treatment was limited and conservative; 3) there were no consistent mental status examinations dictating Victor's level of functioning; and 4) Victor "was only taking a low dose of Xanax for many years." (R. 21). Victor argues the ALJ's analysis of Dr. Nallari, as a treating physician, was insufficiently supported. [DE 19 p. 14-15]. The Commissioner believes the ALJ gave sufficient reasons to discount the opinion of Dr. Nallari. [DE 25 p. 3].

A treating physician is one who regularly provides care to the claimant. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). The record reflects Victor had eleven appointments with Dr. Nallari between December 2009 and January 2013. (R. 416, 417, 419, 420, 421, 422, 425, 426, 427, 428, 430). Only three appointments occurred prior to the date last insured on September 30, 2010. (R. 427, 428, 430). This Court recognizes Dr. Nallari's medical records consist of hand written notes that are largely illegible. Still, on the December 3, 2009 appointment, Dr. Nallari noted Victor "continue[d] to have anxiety attacks" and "depression," placing Victor on the prescription drug Paxil for treatment. (R. 428). Then, on the June 14, 2010 appointment, Dr. Nallari again noted "depression." (R. 427). Dr. Nallari continued to see and treat Victor for depression and anxiety through 2013.

When a treating physician's opinion is involved the ALJ must proceed step-by-step. The ALJ must first ask whether the treating source statement is "well-supported by medically

12

acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). If it is not, the ALJ must determine how much weight to give the evidence, guided by the factors listed at 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6).

Broadly interpreted, the ALJ appears to be arguing that Dr. Nallari's opinion was inconsistent with Victor's conservative treatment and unsupported by other evidence in the record. It is true the record is void of any corroborating mental status examinations. In fact, Dr. Randal Horton, a reviewing psychologist, opined there was insufficient evidence to make a determination of a mental disability. (R. 396). Nor is there any evidence in the record of what limitations, if any, Victor would experience because of the alleged mental impairments. The ALJ's analysis of Dr. Nallari's opinion is vague, but so are the records from Dr. Nallari. Dr. Nallari's opinion that the mental impairments stem from Victor's back pain are supported only by the scribbled notes of "anxiety attacks," "depression," and a drug history that indicates antidepressants arising around the time of Victor's onset disability date. Without more it is difficult to determine how, if at all, Victor's mental impairments impact Victor's ability to work. However, even if the ALJ was correct in giving Dr. Nallari's opinion "very little weight," the ALJ still failed to discuss or show he was guided by the factors in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6) as "required by regulation." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). On remand the ALJ will again need to weigh the opinion of Dr. Nallari with greater specificity and discussion of the relevant factors.

This Court would further highlight Social Security Ruling 96-2p, admonishing the ALJ that "in some instances, additional development required by a case – for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite

support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the record." The Court submits that this is such a case. If indeed the ALJ thought that the record lacked evidence to support Dr. Nallari's opinion, the ALJ may request a further explanation from Dr. Nallari.

2. *RFC Determination*

The final argument from Victor is that the RFC determination is flawed because it does not include Dr. Nallari's diagnoses of anxiety, depression, and a pulmonary obstruction.

The RFC measures an individual's capabilities in light of the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96–8p. The RFC must account for all of a claimant's physical and mental limitations, regardless of whether the ALJ found those limitations to be severe or marked at an earlier stage of the analysis. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a); SSR 96–8p. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, "even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (quoting *Villano*, 556 F.3d at 563). In order to qualify for disability benefits, the claimant must establish that he was disabled prior to the date he was last insured. 20 C.F.R. § 404.131.

In the instant case, the ALJ was correct to not include the pulmonary obstruction in the RFC determination. Victor's date last insured was September 30, 2010. (R. 20). Dr. Nallari notes on October 5, 2009 Victor experienced shortness of breath, (R. 430), however, Victor was

14

not diagnosed with a pulmonary obstruction until April of 2012. (R. 422-424). The ALJ rightly concluded this impairment need not be considered in the RFC determination. The ALJ erred, however, in not including the anxiety and depression into the RFC. The ALJ must consider limitations, even those that are not severe, when making an RFC determination. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ recognized there was evidence of an anxiety disorder and depression in the record. (R. 21). Yet, there is no evidence the ALJ considered these diagnoses when making his RFC determination, as he was required to do. Accordingly, on remand the ALJ will need to readdress Victor's RFC with the impact of mental impairments.

    3.  *Remand is necessary*

Victor asks this Court to reverse the ALJ's decision and award Victor benefits because "[t]he ALJ's decision contains reversible errors." [DE 19 p. 20]. This court does not disagree that the ALJ's opinion is flawed. The remedy for these shortcomings is further consideration, not an award of benefits.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Victor's request that the Court find he is entitled to disability benefits but **GRANTS** Victor's request to remand the ALJ's decision. [DE 19]. This case is **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: January 14, 2016

                                                  /s/ JON E. DEGUILIO  
                                                  Judge  
                                                  United States District Court